UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | | |
|---|---|---|
| AMANDA LE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  24-11559 |
| v. | ) | |
| | ) | JURY DEMANDED |
| USA SWIMMING, INC., | ) | |
| NEW ENGLAND SWIMMING, | ) | |
| BERNAL'S GATOR SWIM CLUB OF | ) | |
| NEW ENGLAND, INC., BAYSTATE | ) | |
| GATOR SWIM CLUB, LLC, ALVARO | ) | |
| SANCHEZ, as Curator/Attorney | ) | |
| Ad Litem of the ESTATE OF JOSEPH | ) | |
| BERNAL, MICHELLE SWEENEY, | ) | |
| ANNE FRAZIER, JOSEPH FRAZIER, | ) | |
| and ALEX CRONIN, | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT FOR DAMAGES

---

Comes now Plaintiff Amanda Le, by counsel, and makes her complaint against the individuals and corporate entities who let a known child rapist work as a youth swim coach, who supported him with infrastructure, position, and prestige for decades, and who allowed him full access to a never-ending cycle of young girls to prey upon. Amanda Le was one of those girls. She alleges as follows:

## PARTIES

1.      **Plaintiff Amanda Le** is a natural person, a citizen of the United States, and a resident of California. She can be served through her attorneys, whose contact information appears below. She was born in December 1992.

2.      **Defendant USA Swimming, Inc.** ("USA Swimming" or "USAS") is a Colorado corporation that governs the sport of swimming in the United States. It can be served at Registered Agents Inc., 1942 Broadway Street, Suite 314C, Boulder, CO 80302.

3.      **Defendant New England Swimming** is a nonprofit corporation organized under the laws of the Commonwealth of Massachusetts. It is the Local Swimming Committee ("LSC") for USA Swimming in Massachusetts. It can be served at New England Swimming, 1241 Highland Ave, Ste Rear, Needham, MA 02492.

4.      **Defendant Bernal's Gator Swim Club of New England, Inc.** ("BGSC-NE") was a domestic profit corporation organized under the laws of the Commonwealth of Massachusetts from August 4, 2006 to February 25, 2016, when it was voluntarily dissolved. The president was Joseph Bernal, the treasurer was Joseph Frazier, and the secretary was Anne Frazier. The Club was owned by Joseph Bernal and Joseph Frazier. Bernal, Frazier, and Frazier were also the directors. Joseph Bernal, also the registered agent, is deceased. Bernal's Gator Swim Club of New England, Inc. will be served through Mr. Bernal's personal representative, Alvaro Sanchez, BURANDT, ADAMSKI, FEICHTHALER & SANCHEZ, PLLC, 1714 Cape Coral Parkway East, Cape Coral, FL 33904.

5.      **Defendant Bernal's Aquatic International Technologies, Inc.** ("BAIT") was a domestic profit corporation organized under the laws of the Commonwealth of Massachusetts from August 4, 2006 to February 26, 2016, when it was voluntarily dissolved. Prior to its dissolution, the president was Joseph Bernal, the treasurer was Joseph Frazier, and the secretary was Anne Frazier. Bernal, Frazier, and Frazier were also the directors. Joseph Bernal, also the registered agent, is deceased. Bernal's Gator Swim Club of New England, Inc. will be served through Mr. Bernal's personal representative, Alvaro Sanchez, BURANDT, ADAMSKI, FEICHTHALER & SANCHEZ, PLLC, 1714 Cape Coral Parkway East, Cape Coral, FL 33904.

6.      **Defendant Baystate Gator Swim Club, LLC** is a domestic limited liability company organized under the laws of the Commonwealth of Massachusetts from October 6, 2015 through the present. It is the successor in interest to Bernal's Gator Swim Club of New England, Inc. Its managers are Anne Frazier and Alex Cronin and its Registered Agent is Joseph Frazier, whose address for service is 155 Broadway Rd, Ste 5, Dracut, MA 01826.

7.      **Defendant Alvaro Sanchez** is sued in his capacity as Curator/Attorney Ad Litem of the Estate of Joseph Bernal. His address for service is BURANDT, ADAMSKI, FEICHTHALER & SANCHEZ, PLLC, 1714 Cape Coral Parkway East, Cape Coral, FL 33904.

8.      **Defendant Michelle Sweeney** is a natural person, a citizen of the United States, and a resident of Florida. She is being sued for her actions and omissions while

employed by Bernal's Gator Swim Club and as a USA Swimming Certified coach. Her address for service is 470 NW 20th Street, Apt 214, Boca Raton, FL 33431.

9.    **Defendant Anne Frazier** is a natural person, a citizen of the United States, and a resident of New Hampshire. She is being sued for her actions and omissions as secretary and director for Bernal's Gator Swim Club of New England, Inc. and to enjoin her future actions as manager of Baystate Gator Swim Club, LLC. Her address for service is 67 Hawthorne Village Road, Nashua, NH 03062.

10.    **Defendant Joseph Frazier** is a natural person, a citizen of the United States, and a resident of Massachusetts. He is being sued for his actions and omissions as owner and director of Bernal's Gator Swim Club of New England, Inc. His address for service is 36 Tobey Road, Unit 2, Dracut, MA 01826.

11.    **Defendant Alex Cronin** is a natural person, a citizen of the United States, and a resident of Massachusetts. He is being sued for his actions and omissions as while employed by Bernal's Gator Swim Club and as a USA Swimming Certified coach. His address for service is 57 Savin Hill Ave, Apt 1, Dorchester, MA 02125.

## JURISDICTION AND VENUE

12.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331, as this case asserts a federal question under 18 U.S.C. § 1595 and related provisions.

13.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**FACTS**

I.    **The Legacy of Joe Bernal and the Gator Swim Clubs**

14.    Joseph Bernal was born Hugo Calderon in Bogota, Colombia.

15.    Hugo Calderon came to the United States and started going by the name of Joseph Bernal; it is unknown if Mr. Calderon ever changed his name officially.

16.    Joe Bernal swam competitively at New York University and graduated in 1963.

17.    In 1969, Bernal founded The Bernal's Gator Swim Club in The Bronx, New York.

18.    The Bernal's Gator Swim Club was an amateur club to train young athletes (children to teens).

19.    It is common practice in the US Olympic Sports movement for universities to have athletic clubs for minor children associated with their universities in order to recruit and attract potential athletes of college age to the universities' athletic programs.

20.    From 1969 through 1977, Bernal was the Aquatics Director and Head Coach of Men's and Women's Swimming at Fordham University in The Bronx, New York.

21.    Practices for The Bernal's Gator Swim Club were held at the Fordham pool.

22.    The Bernal's Gator Swim Club used Fordham's facilities, reputation, and prestige to entice minor athletes to join.

23.    From 1977 to 1992, Bernal was the Aquatics Director and Head Coach of Men's Swimming at Harvard University in Cambridge, Massachusetts.

24.    When Bernal moved from New York to Massachusetts, he also moved the headquarters of his Gators Swim Club from Fordham to Harvard.

25.    Bernal's Gator Swim Club, Inc. was a nonprofit corporation organized under the laws of the Commonwealth of Massachusetts from 1979 until 2012, when it was its status with the Secretary of the Commonwealth of Massachusetts was involuntarily revoked, as no articles or reports had been filed since 1984.

26.    Joseph Bernal reorganized his club as Bernal's Gator Swim Club of New England, Inc. ("BGSC-NE") on August 4, 2006.

27.    Bernal was the President and a Director of BGSC-NE.

28.    Joseph Frazier was the Treasurer and a Director of BGSC-NE.

29.    Joseph Bernal and Joseph Frazier were the co-owners of BGSC-NE.

30.    Anne Frazier was the Secretary and a Director of BGSC-NE.

31.    The stated purpose of BGSC-NE was "Amateur Swim Club."

32.    Also on August 4, 2006, Joseph Bernal incorporated Bernal's Aquatic International Technologies, Inc. ("BAIT") as a domestic profit corporation, organized under the laws of the Commonwealth of Massachusetts.

33.    Bernal was the President and a Director of BAIT.

34.    Joseph Frazier was the Treasurer and a Director of BAIT.

35.    Anne Frazier was the Secretary and a Director of BAIT.

36.    One stated purpose of BAIT was "Sports Camps".

37.    Another stated purpose of BAIT was "Amateur Swim Instruction".

38.    BAIT was voluntarily dissolved on February 25, 2016.

39.    All BAIT assets were subsequently purchased by Anne Frazier, Joseph Frazier, and Alex Cronin.

40.    As a swim coach, Bernal was known to get excellent results:

a)  Bernal coached multiple Olympic medalists and World record holders;

b)  Bernal was on the US coaching staff at two Olympic Games and was the Head Coach for the US at the Pan American Games in 1991;

c)  Bernal was inducted into three Halls of Fame, including the American Swim Coaches Hall of Fame in 2015.

41.    Since early in his career, Bernal was also known as a coach who took inappropriate liberties with his young, female athletes, including making inappropriate sexual comments, and coerced/non-consensual touching, fondling, and sex.

42.    Bernal's propensity to have sexual interactions with children was known at the national governance level (then the AAU) by at least 1976, when Bernal began a five-year campaign of systemic emotional and sexual abuse of a girl named Kim Stines, who was only 12- or 13-years-old at the time.

43.    By the time Defendant USA Swimming took over national governance of the sport of swimming (between 1980 and 1981), Bernal's child raping was well known within the world of competitive swimming in the United States.

44.     If an athlete wants to officially compete at any level of their sport, they must be a member of the NGB – here, USA Swimming, and to do that, they must join a USA Swimming club (such as BGSC-NE), which operates under the LSC.

45.     Bernal was a coach member of USA Swimming from at least 1994 until 2016.

46.     On February 23, 2016, Bernal was permanently banned by USA Swimming for his abuse of "Athlete A".

## II.     The Exploitation and Abuse of Amanda Le

47.     Plaintiff Amanda Le is Athlete A.

48.     At all times relevant, Amanda was a member of USA Swimming.

49.     Amanda trained and competed with BGSC-NE from 2006-2010.

50.     Practices were from 3:30 until 5:00 p.m. at MIT and again from 5:30 until 8:00 p.m. at Bentley University.

51.     Bernal was Amanda's coach.

52.     Bernal charged Amanda reduced monthly club dues because her family could not afford to pay the regular amount.

53.     Amanda was impressed by Bernal and wanted to be his favorite.

54.     Amanda quit her high school swim team her sophomore year to curry favor with Bernal.

55.     When she was 14, Amanda began spending a lot of time with Bernal.

56.     Sometime in 2008 or 2009 Bernal started driving Amanda from MIT to Bentley University twice a week for practice.

57.     Once, while "deck changing" when she was 14, another BGSC-NE coach accused Amanda of wearing "granny panties."

58.     Bernal called Amanda over and asked if he could see, whereupon Amanda pulled open her shorts and Bernal put his hand down her shorts to see if she was actually wearing them.

59.     When she was 15 (and Bernal was in his mid-60s), Bernal kissed Amanda at the Bentley pool after practice.

60.     This was Amanda's first kiss and was very important to her.

61.     Shortly thereafter, Bernal asked Amanda if she "could handle this" and they made out.

62.     Amanda was too young to consent to any sexual contact with Bernal.

63.     In November 2008, Bernal drove Amanda alone to New York for a swim meet at Asphalt Green, during which drive a lot of kissing and groping occurred.

64.     At their hotel for the meet in New York, Bernal texted Amanda to let her know when the "coast was clear" and she could go to his room.

65.     When Amanda arrived in his hotel room, Bernal took her hand and placed it on his penis.

66.     Amanda had never seen a penis before and did not know what to do or think.

67.     Bernal had Amanda perform oral sex on him.

68.     Bernal then pulled Amanda's shorts down and performed oral sex on her.

69.     Bernal also digitally penetrated Amanda's vagina.

70.     After this trip, Amanda considered Bernal her boyfriend.

71.     While Amanda was in New York, her mother found her diary, which detailed her relationship with Bernal, including the physical aspects of it (the "diary incident").

72.     Amanda was mortified and worried because her mother threatened to take her off the team and to report Bernal to the police.

73.     Amanda's entire identity and her self-worth were tied into the Gators swim team, and she was terrified of losing it.

74.     Amanda wanted to die.

75.     Amanda told Bernal that her mother had found the diary.

76.     Amanda's parents showed the diary entries to Defendant Cronin.

77.     Defendant Cronin did not contact law enforcement.

78.     Defendant Cronin did nothing to protect Amanda.

79.     Bernal told Amanda exactly what to tell her mother in response to the situation.

80.     Bernal told Amanda to say that it was a fantasy she was writing about, and not about events that had actually occurred.

81.     Beginning in November 2008, Amanda had her mother drop her off at the Burlington Mall on weekends, ostensibly hang out with friends, but Bernal would pick her up and take her to his house.

82.     Amanda and Bernal texted each other regularly, using fake names in their contact lists because they were afraid of being caught.

83.     Amanda spent overnights in Bernal's hotel room on several different team travel trips.

84.     In 2008, at a swim meet in Hawaii, when she was around 16-years-old, Amanda stayed in Bernal's room late into the night.

85.     Bernal and Amanda engaged in oral sex in his hotel room in Hawaii.

86.     There were no parents or chaperones on the trip to Hawaii.

87.     The trip was organized by BGSC.

88.     In March 2009, after failing to achieve a Junior National cut, Amanda took a break from swimming and avoided contact with Bernal.

89.     While she was in high school, Amanda started to have panic attacks, which she believed at the time were due solely to the stress of swimming; she knew that was afraid of performing poorly because she would be punished.

90.     Amanda was also suffering the consequences of the sexual abuse, although she did not realize it at the time.

91.     Amanda had conflicting emotions and was embarrassed and ashamed, particularly because of Bernal's age.

92.     Amanda had nobody in the swimming community who she felt she could talk to about Bernal.

93.     Amanda mistakenly thought she was responsible and at fault for her relationship with Bernal. In fact, she was – and would continue to be – the victim of his abuse of power.

94.     Amanda returned to swimming and resumed the abusive relationship with Bernal in April 2009. She knew of no other way to be a successful swimmer outside this relationship.

95.     In April 2009, when she was 16 and he was 69, Amanda had sexual intercourse with Bernal.

96.     In 2009, during a two-week team trip to Florida, Amanda snuck out every night to have sex with Bernal.

97.     The Florida trip consisted of a swim meet, sanctioned by USA Swimming, and then a BGSC training component, organized by BGSC.

98.     One night, after she had an argument with her roommate, Amanda slept in Bernal's room.

99.     Amanda told her teammates she was sleeping in Bernal's room.

100.    Early the following morning, Alex Cronin came to Bernal's hotel room and Amanda answered the door (the "hotel room incident").

101.    Cronin was surprised to see Amanda there.

102.    From the end of her junior year of high school, and continuing through her senior year, Amanda would skip school and Bernal would pick her up at school and take her to his house for sex.

103.    Bernal forged excuse letters to get Amanda excused from school activities.

104.    In March 2010, Amanda competed in the Junior National Swimming Championships in Orlando, Florida.

105.    This was a USA Swimming sanctioned event.

106.    USA Swimming had complete control over the rules that would apply to the event.

107.    The team stayed at the Embassy Suites by Hilton in Orlando.

108.    Bernal was there.

109.    Alex Cronin was there.

110.    Michelle Sweeney came for a visit.

111.    Amanda's teammates knew to look for her in Bernal's room.

112.    Bernal sometimes made Amanda hide under or behind furniture whenever people came to his hotel room for her.

113.    Amanda graduated from high school in 2010.

114.    Amanda initially accepted an offer to swim at the University of Miami, but Bernal convinced her to transfer to Bentley University her second semester to be with him.

115.    While she was at Miami, Bernal flew down to be with her.

116.    Bernal also provided her with airline tickets for return trips to Boston in October and November 2010 so that she could be with him.

117.    In November 2010, Amanda spent a week with Bernal.

118.    She was still only 17-years-old.

119.    Amanda had taken an extra suitcase to leave at Bernal's house in preparation for her move to Bentley.

120.    While swimming at Bentley from 2011 through 2014, Amanda would skip team practices to be with Bernal.

121.    Bernal got Amanda pregnant during her junior year at Bentley.

122.    Bernal and Amanda made two or three attempts to obtain an abortion in Boston before finally having the procedure scheduled in New York.

123.    Amanda underwent an abortion two weeks before her college championship swim meet.

124.    Bernal accompanied her to the abortion.

125.    Bernal paid for the abortion in cash.

126.    A few months after the abortion, Michelle Sweeney found Amanda's suitcase at Bernal's house and suspected they were having sex.

127.    Michelle Sweeney knew that her father had had sex with many of the underaged girls he coached in swimming over the previous several decades.

128.    While Michelle Sweeny was a minor she knew that her dad (Joe Bernal) had sex with the children he coached – including at least one of her teammates.

129.    Sweeney confronted Amanda about the suitcase.

130.    Sweeney stated something to the effect of, "How long has this been going on? Since you were 16?"

131.    Sweeney physically assaulted Amanda.

132.    Bernal came home during the assault and tried to calm Sweeney down while also gesturing to Amanda to lie and deny the accusations Sweeney was making about their relationship.

133.    When Amanda graduated from Bentley University in 2014, she was still in a relationship with Bernal.

134.    In August 2014, Bernal took Amanda to Hawaii for a vacation at his expense.

135.    The panic attacks that Amanda had begun to experience in high school, after the sexual abuse began, had followed her through to adulthood.

136.    In September 2014, Amanda ended her relationship with Bernal.

137.    Amanda finally told the Bentley Pool Director, Mary Kay Samko, of her relationship with Bernal and her resulting panic attacks in September of 2015.

138.    Ms. Samko reported Bernal to the University and he was banned from the campus by the Bentley Athletic Director.

139.    Cronin called Amanda two days later, but she did not pick up.

140.    Cronin also contacted Amanda's mother, but she did not answer.

141.    At the time of her abuse by Bernal – and as a direct result of her abuse by Bernal – Amanda blamed herself for the abuse.

142.    It was not until much later that Amanda was able to realize the harm caused to her by Bernal's abuse.

143.    Amanda was also unaware that the other Defendants to this litigation had participated in an ongoing coverup that facilitated and encouraged her abuse; thus, it was not apparent to Amanda until recent years (i.e., more recently than seven years before filing this Complaint), that the non-Bernal Defendants' negligence had caused her emotional and psychological condition.

### III.    <u>The People and Structures Who Let Amanda Le Down</u>

*The Governance of Swimming in the United States*

144.    The Ted Stevens Amateur Sports Act of 1978 empowered Congress to create the United States Olympic Committee ("USOC"; now the United States Olympic & Paralympic Committee, "USOPC") to govern amateur sports.

145.    Each sport has its own National Governing Body ("NGB") under the umbrella of the USOPC.

146.    NGBs are organizations that govern and manage all aspects of their individual sports within the United States.

147.    USA Swimming is the NGB for the sport of swimming in the U.S.

148.    Local Swimming Committees (LSCs) are separate and independent corporations to whom USA Swimming has delegated certain governing and supervisory responsibilities within certain geographic boundaries.

149.    Each LSC has jurisdiction over the sport of swimming as delegated to it in the USA Swimming Rules and Regulations to conduct swimming programs consistent with the policies and procedures of USA Swimming and to sanction, approve, observe, oversee, and conduct on behalf of USA Swimming competitive swimming events within the LSC boundaries.

150.    LSCs are tasked to provide programming, service, and support to their member athletes, teams, coaches, and volunteers.

151.    USA Swimming "charters" swim clubs, including Bernal's Gators and Baystate Gators.

152.    Individual clubs are directly governed by the LSC for their area.

153.    New England Swimming is the LSC for the Boston area, including for BGSC-NE.

154.    LSCs and individual clubs operate under the auspices of USA Swimming.

155.    Membership in USA Swimming is required to compete at the highest levels of amateur swimming.

156.    Individual athletes, coaches, and clubs must all be USA Swimming members.

157.    Coaches and clubs are certified by USA Swimming.

158.    At all times, USA Swimming has dictated the requirements for adults to be coach members.

159.    USA Swimming mandates what courses coaches must take to become certified members.

160.    Amanda was a dues-paying member of USA Swimming.

161.    Bernal was a certified coach member of USA Swimming.

162.    Cronin was a certified coach member of USA Swimming.

163.    Sweeney was a certified coach member of USA Swimming.

164.    Defendant Joe Frazier was a board member of New England Swimming at all times when Amanda Le was having sex with Joe Bernal.

165.    BGSC-NE was a USA Swimming sanctioned club.

166.    United Swimming mandates that only its member coaches be on deck at all practices and competitions.

*The history of sex abuse of minors in USA Swimming*

167.    USA Swimming permitted coaches to have sex with their athletes until 2013.

168.    USA Swimming did not prohibit coach athlete sexual relationships until 2013.

169.    USA Swimming refused to adopt a ban on coach athlete sexual relationships in 2010.[1]

170.    Multiple times prior to 2010, USA Swimming was explicitly aware that it had dozens, if not hundreds, of member coaches who raped children. *See* Exhibit A – Scott Reid, 100s of USA swimmers were sexually abused for decades and the people in charge knew it and ignored it, investigation finds, ORANGE COUNTY REGISTER, Feb. 16, 2018, updated July 30, 2018 (https://www.ocregister.com/2018/02/16/investigation-usa-swimming-ignored-sexual-abuse-for-decades/).

171.    Prior to 2015, Chuck Wielgus, then Executive Director of USA Swimming explicitly stated that he was aware of the problem of child rape by USA Swimming coaches.

172.    In 2009, Wielgus said, "I am aware of it, we get calls at the office . . . One of biggest fears in that someone is going to start putting all this together." *See* video at

---

[1] Ironically, one of the earliest advocates inside USA Swimming for prohibiting coach athlete sexual relationships was David Berkoff, a multiple time gold medalist who was coached by Bernal at Harvard. Berkoff advocated in the early 1990s for a prohibition on coaches "dating" the children a/k/a athletes they coached. Berkoff's efforts were successfully resisted by USA Swimming.

this link: https://abcnews.go.com/Blotter/usa-swimming-head-years-investigation-sports-sexual-abuse/story?id=24070132)

173.    In 2010, for the first time, USA Swimming published a list of coaches and members that were banned for criminal conduct.

174.    USA Swimming keeps a secret "flagged list" of coaches it knows to be accused of child rape. (see Exhibit

B)https://www.espn.com/olympics/swimming/news/story?id=5414182 )

175.    This list has never been made public.

176.    It is not known when USA Swimming started maintaining the "flagged list."

177.    Prior to 2010, USA Swimming only took action against its member coaches for accusations of child rape when they were either forced to as a result of a law enforcement arrest or prosecution, or when a victim would submit a written complaint.

178.    In or around 1986, USA Swimming stopped being able to purchase liability insurance from the public market because of the number of child sex abuse claims that were being made against the organization.

179.    As a result, USA Swimming was forced to create its own captive insurance company to cover, United States Swimming Insurance Company ("USSIC"), which it incorporated under the laws of Barbados.

180.    All USA Swimming Members, from individual athletes to coaches to clubs, must purchase insurance from USSIC.

181.    For swimmers, a portion of their USA Swimming Membership dues is used to purchase insurance from USSIC.

182.    Clubs are listed on the insurance policies as, something to the effect of, "USA Swimming d/b/a [Club Name, e.g. Bernal's Gator Swim Club of New England, Inc.]".

183.    USA Swimming is ultimately responsible for implementing the policies and procedures necessary to keep its members safe.

184.    Some of the most vulnerable members of USA Swimming are its elite child and teen athletes, like Amanda, whose hopes and dreams for their swimming careers entirely hinge on keeping their coaches happy.

185.    Elite child and teen athletes, like Amanda, often spend the majority of their free time with their coaches.

186.    Coaches of elite child and teen athletes, like Bernal, are in positions of great power over their athletes, like Amanda.

187.    Youth athletic organizations, including BGSC-NE and BAIT, must operate their businesses with reasonable care for the safety of their members.

188.    At all relevant times, at all levels of amateur swimming, it was known that there was a heightened risk for sexual abuse of minor athletes by their coaches.

189.    At all relevant times, USA Swimming knew that there was a heightened risk for sexual abuse of minor athletes, including Amanda, by their coaches.

190.    At all relevant times, New England Swimming knew that there was a heightened risk of sexual abuse of minor athletes, including Amanda, by their coaches.

191.    At all relevant times, BGSC-NE knew that there was a heightened risk of sexual abuse of minor athletes, including Amanda, by their coaches.

192.    At all relevant times, BAIT knew that there was a heightened risk of sexual abuse of minor athletes, including Amanda, by their coaches.

193.    On information and belief, USA Swimming was aware of complaints about Bernal's inappropriate behavior with minor female swimmers years before Amanda started swimming.

194.    On information and belief, Joe Bernal was included on the USA Swimming "flagged list" prior to his banning from USA Swimming 2016.

195.    USA Swimming was aware that Joseph Bernal had several sexual relationships with his former athletes prior to 2015.

196.    USA Swimming was aware that Joseph Bernal had been accused of having sexual relationships with the children he coached prior to 2015.

197.    Despite the fact that Bernal raped children, USA Swimming named him the Olympic Swim coach for the 1984 and 1988 Olympics.

198.    USA Swimming naming Bernal as the 1984 and 1988 Olympic Teams was an explicit ratification of Bernal's conduct.

199.    A USA Swimming member coach who produced medals and money could rape children with impunity.

200.    USA Swimming continued to venerate Joe Bernal until his suspension in 2016.

201.    On information and belief, New England Swimming was aware of complaints about Bernal's inappropriate behavior with minor female swimmers years before Amanda started swimming.

202.    At all relevant times Joe Frazier was on the Board of New England Swimming.

203.    Joe Frazier knew or should have known of Joe Bernal's proclivities to rape children before Amanda Le was raped by Bernal.

204.    Joe Frazier knew or should have known that Bernal was sexually abusing Amanda while she swam for the club that he owned with Bernal.

205.    Joe Frazier knew or should have known that Bernal was sexually abusing Amanda while he was on the board of New England Swimming.

206.    On information and belief, BGSC-NE was aware of complaints about Bernal's inappropriate behavior with minor female swimmers years before Amanda started swimming.

207.    On information and belief, BAIT was aware of complaints about Bernal's inappropriate behavior with minor female swimmers years before Amanda started swimming.

208.    USA Swimming did not have, or did not enforce, any policies or procedures to protect minor athletes from sexual predation by their coaches.

209.    New England Swimming did not have, or did not enforce, any policies or procedures to protect minor athletes from sexual predation by their coaches.

210.    BGSC-NE did not have, or did not enforce, any policies or procedures to protect minor athletes from sexual predation by their coaches.

211.    BAIT did not have, or did not enforce, any policies or procedures to protect minor athletes from sexual predation by their coaches.

212.    Bernal was widely known to exhibit "creepy" behavior around minor female swimmers.

213.    Many female swimmers knew to avoid Bernal because his behavior made them feel uncomfortable or unsafe.

214.    Bernal also openly "dated" his swimmers and former swimmers when they obtained the age of majority.

215.    In February of 2016, Michelle Sweeney, herself a USA Swimming member and certified coach, gave a sworn affidavit that she was aware of Amanda abuse prior to 2015:

216.    Sweeney swam for her father as a child.

217.    While swimming in her father's swim clubs, Sweeney was aware he was having sex with minors on the team.

218.    By the late 1990s, the children Joe Bernal raped were younger than Michelle herself.

219.    Michelle Sweeney had firsthand knowledge her father was raping Amanda prior to the USA Swimming investigation in 2015.

220.    After swimming for her father, Sweeney attended the University of Nebraska and then, at some point, came to Massachusetts to coach for Bernal's Gator Swim Club.

221.    Sweeney worked at Bernal's Gators with Cronin.

222.    Alex Cronin was aware that Joseph Bernal raped children prior to 2015.

223.    Cronin knew that Bernal was raping Amanda Le when she was child.

224.    Specifically, before 2015, Cronin was confronted in person by Amanda Le's parents regarding Amanda's diary; in 2016, he wrote about what he had read in the diary to USA Swimming in support of Bernal, revealing that:

a)  Cronin had read entries that depicted, at least, Amanda embracing and kissing Bernal;

b)  Cronin knew that the behavior depicted in the diary entries was inappropriate;

c)  Cronin knew that the behavior depicted in the diary entries was illegal; and

d)  Cronin knew that the behavior depicted had to be reported to law enforcement.

225.    To be clear, Cronin did NOT report Amanda's parents' concerns to law enforcement.

226.    On at least one other occasion, Cronin encountered Amanda as a minor in coach Bernal's hotel room.

227.    Cronin did nothing in response to Amanda being alone in Bernal's hotel room.

228.    Upon information and belief, Joseph Frazier and Anne Frazier were aware of both the diary and hotel room incidents involving minor Amanda and Joe Bernal.

229.    Joseph Frazier was on the Board of New England Swimming at the time of both the diary and hotel room incidents.

230.    Sometime in September 2015, Mary Kay Samko called Bentley University (where Bernal's Gators were long time pool renters) and reported that Bentley student Amanda Le was involved in a sexual relationship with Bernal.

231.    Upon information and belief this report also detailed that Bernal had been having sex with Amanda Le when she was a minor.

232.    Bentley University immediately banned Bernal from its pool.

233.    Bentley University told Defendants Cronin, Anne Frazier, and Joe Frazier that Bernal was banned from Bentley for allegedly having sex with a minor.

234.    After being banned from the Bentley pool, Joe Bernal started negotiations with Defendants Cronin, Anne Frazier, and Joe Frazier for the sale of his portion of Bernal's Gators.

235.    In late September 2015, Amanda reported her abuse to SafeSport.

236.    On October 6, 2015, Anne Frazier and Alex Cronin formally organized Baystate Gator Swim Club, LLC under the laws of the Commonwealth of Massachusetts.

237.     Bernal transferred his interest in Bernal's Gator's to his son Craig Bernal by means unknown.

238.    Craig Bernal was a violent drug addict.

239.    Cronin was Craig Bernal's roommate at some point between 2005-2010.

240.    In the fall of 2015, Cronin knew Craig Bernal was a drug addict.

241.    In the fall of 2015, Anne and Joe Frazier knew that Craig Bernal was a drug addict.

242.    Sometime in October 2015, USA Swimming commenced an investigation into allegations that Bernal raped Amanda Le.

243.    During that investigation, Defendant Cronin admitted that he had heard rumors that Bernal "fondled" children.

244.    Cronin attributed Bernal's fondling of children to Bernal's "Latin heritage."

245.    Sweeney also provided sworn testimony to USA Swimming.

246.    Sweeney told USA Swimming that her father raped the girls that swam for him prior to Amanda Le.

247.    Cronin and the Frazier Defendants proceeded to purchase the assets of Bernal's Gators sometime between October 2015 and February 2016.

248.    At the time Cronin and the Frazier's purchased the "assets" of Bernal's Gators, they were aware that Bernal raped Amanda Le as a child.

249.     Joseph Frazier felt that Bernal's Gators was a "cash cow" in the fall of 2015.

250.    The Fraziers and Cronin benefited from Amanda Le's sexual exploitation by being able to purchase the "assets" of Bernal's Gators far below market value.

251.    At some point in the fall of 2015 or the winter of 2015-16 Joe Bernal moved back to his native Colombia.

252.    Joe Bernal had to sell his interests in Bernal's Gators to Cronin and the Fraziers to finance his new life in Colombia.

253.    BGSC-NE and BAIT were voluntarily dissolved two days after Bernal was banned.

254.    Baystate Gator Swim Club, which was formed in mere weeks after USA Swimming had begun investigating Amanda's allegations against Bernal, was positioned to begin operations immediately as the new BGSC.

255.    The new BGSC was compromised of almost all, if not all of the members of Bernal's Gators.

256.    The new BGSC used the same call letters as Bernal Gators.

257.    The new BGSC kept the Gator logo and mascot from Bernals Gators.

258.    The BGSC kept the same "Gator colors of green and yellow"

259.    The new BGSC kept the same "47 years" of "tradition, excellence, and Gator Pride.

**CAUSES OF ACTION**

**Count 1: Violation of TVPA, 18 U.S.C. §§ 1589-96**
*Against All Defendants*

260.    The foregoing paragraphs are incorporated by reference as though fully restated herein.

261.    The Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589-96, creates civil liability for those who commit or benefit from forced labor or services or sex trafficking and trafficking-related offenses, including those enumerated in 18 U.S.C. §§ 1589, 1590, and 1591.

262.    Violations of the TVPA include forcing someone into labor or sexual services, knowingly benefitting from such forced labor or services, recruiting or transporting a person for labor or services against their will, especially if those actions include sexual abuse, attempting to commit these trafficking offenses, conspiring to commit these trafficking offenses, obstructing or interfering with efforts to enforce the TVPA, and benefitting financially from these offenses.

263.    The TVPA also establishes civil "venture liability" for anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter[.]" 18 U.S.C. § 1595(a).

264.    The TVPA expressly authorizes civil remedies against both the perpetrator and others who knowingly benefit from violations of the TVPA. *See* 18 U.S.C. § 1595(a).

265.    Bernal knowingly engaged in sexual relations with a child; a child that he offered reduced rates to join his team, one-on-one lessons, and for whom he bought gifts, plane tickets, hotel rooms, and dinners.

266.    The other Defendants knew Bernal knowingly engaged in sexual relations with a child. They knowingly and/or recklessly benefited financially from Bernal's exploitation of Ms. Le, as she continued to swim for Bernal's Gators.

267.    Defendants had actual knowledge of or acted with reckless disregard of the fact that Le would be forced to commit sex acts and that she would be subjected to a scheme and/or pattern of conduct that would make her belief that she would be subject to serious harm, including but not limited to emotional trauma, physical restraint, and additional punitive measures, if she failed to perform sex acts.

268.    Defendants benefitted financially from Bernal's actions in violation of 18 U.S.C. § 1589(a) because Ms. Le continued to swim for Bernal's Gators.

269.    Defendants actually knew the fact or, in the alternative, acted in reckless disregard of the fact, of the danger or serious physical harm in which they placed Le.

270.    The sexual abuse and exploitation of children (as that term is defined by the TVPA), including Le, by those in supervisory, leadership, and/or coaching roles was a problem that Defendants were well aware of at all relevant times.

271.    In his decades of coaching, Bernal was known to have inappropriate relationships with underage, female swimmers under his tutelage.

272.    There is at least one other federal lawsuit pending related to historical allegations of sex abuse against Bernal and the swim clubs with which he was associated.

273.    Discovery will likely uncover other complaints by swimmers against Bernal, which were received or known about by one or more Defendants.

274.    Defendants have demonstrated a willingness to cover up Bernal's crimes –
Defendants Michelle Sweeney, Anne Frazier, Joseph Frazier, and Alex Cronin.

275.    Defendants are liable for their participation in a venture that they knew or
reasonably should have known was violating the TVPA. In particular, Defendants knew
or reasonably should have known that male coaches (including Bernal) were selecting
one girl after another to provide him with sexual services in exchange for preferential
treatment and reduced fees.

### Count 2: Battery – Sexual Abuse
*Against the Estate of Joe Bernal*

276.    The foregoing paragraphs are incorporated by reference as though fully
restated herein.

277.    On numerous occasions between 2006 until her 18th birthday in December
2010 Joe Bernal sexually abused Amanda Le.

278.    Joe Bernal knew Amanda Le was not able to consent to sexual contact and
he intentionally sexually abused Amanda Le by performing cunnilingus, digital
penetration, and sexual intercourse on her before the age of 18 in various locations
around the United States, including Massachusetts.

### Count 3: Negligence
*Against All Defendants, Other Than the Estate of Joe Bernal*

279.    The foregoing paragraphs are incorporated by reference as though fully
restated herein.

280.    Alex Cronin, Joe Frazier, Anne Frazier, Baystate Gators, BAIT, and New England Swimming all had actual  or constructive knowledge that Bernal was engaged in inappropriate conduct with Amanda Le when she was a minor.

281.    USA Swimming, Baystate Gators, and New England Swimming failed to promulgate, enact, and enforce policies and procedures including policies prohibits coach – athlete sexual relationships, policies prohibiting coaches from traveling alone with athletes, and policies to ensure the proper supervision of coaches and minor athletes.

282.    Unbenknowst to Amanda, the non-Bernal Defendants had negligently fostered and allowed an environment which accepted sexual abuse of minors. This both allowed her abuse to happen, and made it difficult to recognize.

283.    The non-Bernal defendants had actual knowledge of Bernal's danger toward minors, and yet did nothing to protect Amanda.

284.    All Defendants owed Amanda Le, a minor child, a duty to keep her safe.

285.    All Defendants breached that duty in the following ways:

a)    Creating and fostering an environment where sexual abuse of a minor was ignored and allowed;

b)    Creating an environment which posed immediate danger of sexual abuse to minors like Plaintiff;

c)    Failing to report the sexual abuse of a minor;

d)    Continuing to allow Joe Bernal the position of authority and power that he required in order to perpetuate his sexual abuse of Plaintiff;

e)  Allowing a minor child to be put in situations highly indicative of sexual abuse;

f)  Other acts of negligence to be learned in discovery and proven at trial.

286.    Those breaches resulted in Amanda Le being raped and sexually abused as a minor.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Amanda Le prays that the Court will enter judgment in her favor and against Defendants as follows:

A.  For mandatory restitution pursuant to 18 U.S.C. § 1593;

B.  For compensatory damages in an amount to be proven at trial;

C.  For exemplary and punitive damages against Defendants in their individual capacities;

D.  For attorneys' fees, costs, and all other appropriate expenses;

E.  For injunctive relief against Anne Frazier, Alex Cronin, Joseph Frazier and the Bay State Gator Swim Club requiring that they operate their swimming club in a manner consistent with federal law and reasonably calculated to promote the safety of their members; and

F.  For any and all other relief deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Respectfully,

_____

Terrence D. Garmey
Alexis G. Chardon (pro hac vice application
forthcoming)
Christopher Harmon (pro hac vice application
forthcoming)
*Local Counsel for Plaintiff*
GARMEY LAW
482 Congress Street, Suite 402
Portland, ME 04101
Tel: (207) 899-4644

s/ *Jonathan Little*_____

Jonathan Little
Annemarie Alonso, *pro hac vice forthcoming*
SAEED & LITTLE, LLP
#189 – 133 West Market Street
Indianapolis, IN 46204
(812) 320-3367
jon@sllawfirm.com
annie@sllawfirm.com