UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | | |
|---|---|---|
| AMANDA LE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-11559-NMG |
| | ) | |
| USA SWIMMING, INC., | ) | |
| NEW ENGLAND SWIMMING, | ) | |
| BERNAL'S GATOR SWIM CLUB OF | ) | |
| NEW ENGLAND, INC., BAYSTATE | ) | |
| GATOR SWIM CLUB, LLC, ALVARO | ) | |
| SANCHEZ, as Curator/Attorney | ) | |
| Ad Litem of the ESTATE OF JOSEPH | ) | |
| BERNAL, MICHELLE SWEENEY, | ) | |
| ANNE FRAZIER, JOSEPH FRAZIER, | ) | |
| and ALEX CRONIN, | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE IN OPPOSITION TO DEFENDANTS USA SWIMMING, INC. AND NEW ENGLAND SWIMMING'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**

Plaintiff Amanda Le, by counsel, opposes Defendants USA Swimming, Inc. and New England Swimming, Inc.'s Motion to Dismiss [Dkt. 44] as follows:

## INTRODUCTION

Until 2023, Amanda Le thought she was the only young girl her senior citizen swimming coach, Joe Bernal, had sexually groomed and abused. She had been thoroughly taken in by him, and nobody could have convinced her that she was just one in a long line of many. Amanda had no reason to know that the sexual abuse and exploitation she suffered was not only the result of the direct actions of her abuser, but also the actions and inactions of multiple systems and people who had failed her. But as time – the great healer - passed and Amanda continued to process

*Bernal*'s abuse of her, she learned that the very organizations that should have protected her from him – USA Swimming and New England Swimming – had known for decades before her that Bernal was a child rapist and they did absolutely nothing to stop him. Doing so would have cost them money and prestige. They cared more about his results as a coach than the preservation of the innocence of children. She was just the last in a long line of sacrificial lambs. Fortunately, federal and state laws are catching up with the fact that child sex traffickers do not operate in a vacuum, and there are now mechanisms for attaching civil liability to the people and organizations that support and/or benefit from involvement with the trafficking or traffickers, including the Trafficking Victims Protection Reauthorization Act (the "TVPRA"). Once she learned that she was just one victim caught up in a broader web of abuse, Amanda Le timely filed suit under the TVPRA and Massachusetts state law against, among others, USA Swimming and New England Swimming. These organizations have moved to dismiss her Complaint. The Motion should be denied.

## SUMMARY OF FACTS AND ALLEGATIONS

Plaintiff Amanda Le's First Amended Complaint ("FAC") details how she was groomed and sexually abused by Joseph Bernal over multiple years and how multiple individuals, including Defendants USA Swimming and New England, *knew* what Bernal was doing and did nothing to stop him. [*See generally*, Dkt. 40] Plaintiff's FAC includes the following, well-pleaded allegations.

Amanda Le trained and competed with BGSC-NE from 2006-2010. [¶49[1]] Because she was born in December 1992, Amanda was around 13- or 14-years-old when she first joined the team. [¶1] Joseph Bernal was the President and co-owner of BGSC-NE and Amanda's coach. [¶¶27, 29, 53] He was a USA Swimming certified coach and his club fell under the umbrella of New England Swimming. [¶¶121, 152-55] Bernal's grooming and abuse of Amanda began shortly

---

[1] All references in this section are to Plaintiff's FAC [Dkt. 40], unless otherwise indicated.

after she joined the team; when she was 14, Amanda began spending a lot of time with Bernal and once, when she was 14 and "deck changing", he reached down her shorts to see what kind of underwear she had on. [¶¶57, 59-60] When Amanda was 15, and Bernal was in his mid-60s, Bernal kissed her at the Bentley pool after practice. [¶61] By 2008, when she was around 15 or 16, Bernal had escalated his abuse of Amanda to include groping, oral sex, and digital penetration, and Amanda considered him to be her boyfriend. [¶¶65, 67, 69-72] In April of 2009, when she was 16 and he was 69, Bernal had sexual intercourse with Amanda. [¶95]

Amanda Le was not the first young, female athlete Bernal had exploited, abused, and raped. Indeed, USA Swimming was aware of complaints about Bernal's inappropriate behavior with minor female swimmers years before Amanda even started swimming. [¶194] Bernal was likely on the USA Swimming secret "flagged list" prior to his being banned from USA Swimming in 2016. [¶195] And USA Swimming knew he had had several sexual relationships with former child athletes prior to 2015. [¶¶196-97] New England Swimming was also aware of complaints about Bernal's inappropriate behavior with minor female swimmers years before Amanda started swimming. [¶202] Joe Frazier, a New England Swimming board member, knew of Bernal's sexual proclivities before Amanda Le was raped by him. [¶¶204-205] And Michelle Sweeney, Bernal's daughter and herself a USA Swimming coach and committee member and former New England Swimming board member, also knew that her father was a child rapist well before Amanda ever joined Bernal's Gators Swim Club. [*See* Dkt. 43 at 3-5 (Response in Opposition to Sweeney Motion to Dismiss)].

Unfortunately, despite their actual knowledge that Bernal was using his swim club as his private hunting ground for young prey, neither USA Swimming nor New England Swimming (nor any of the other defendants) did *anything* to stop him until 2016, when Amanda reported the abuse

to an outside coach who took immediate action and left them with no choice. [*See* Dkt. 40, ¶244] The Complaint explains why Defendants had previously chosen to do nothing to warn or protect the children in their charge, including Amanda, from Bernal: they were profiting from his coaching results, in the form of medals and money. [¶276]

Grounded in the facts and subsequently well-pleaded allegations of the FAC, summarized above, Ms. Le has adequately stated two causes of action against USA Swimming and New England Swimming: Count I – Violation of TVPRA, 18 U.S.C. §§ 1589-96, and Count III – Negligent Conduct Contributing to the Sexual Abuse of a Minor by Another Person.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations as true and draw all reasonable inferences therefrom in the Plaintiff's favor.

## ARGUMENT

### A.  Ms. Le Has Adequately Stated Claims for Relief

Ms. Le has adequately stated claims for relief for the actions and omissions of Defendants USA Swimming, Inc. and New England Swimming, Inc.

As a preliminary matter, it is important to remember that the TVPA does not protect only victims who were minors when their sexual abuse occurred, even if it has special limitations provisions applicable to those who were abused as minors. Here, Amanda Le was a TVPA victim

as a minor and also for several years after her 18th birthday, and her lawsuit here seeks compensation for this entire, continuing nightmare.

### 1. Ms. Le's TVPRA claim is not time-barred.

Defendants' primary argument is that Ms. Le's TVPRA claim is time-barred, and claims that "for alleged offenses against minors, only a person under the age of 28 can file under this Act." [Dkt. 44 at 4] This is simply false. It is true that 18 U.S.C. § 1595 establishes a ten-year statute of limitations, but on September 16, 2022, that changed – at least for claims like Amanda Le's, alleging violations of §§ 1589 and 1591 [*see* Dkt. 40 at 33-37]. On that date, amendments to 18 U.S.C. § 2255 (providing civil remedies for personal injuries) took effect, dispensing with the statute of limitations for "[a]ny person who, while a minor, was a victim of a violation of section 1589, 1590, 1591 . . . of this title . . . and who suffers personal injury as a result of such violation, *regardless of whether the injury occurred while such person was a minor*[.]" 18 U.S.C. § 2255(a). Under the plain language of this statute, a person would benefit from the extended statute of limitations if their abuse began while they were a minor but then continued after they turned the age of 18. This amendment was a natural and logical one, given the widespread recognition that that minors who are sexually abused are often unable to put the pieces together about what happened to them until a much later age; this truth holds equally for minors who continue to be abused after their 18th birthday as well as for those whose abuse stops sooner.  And although the amendments were not retroactive, the law which implemented them (the "Eliminating Limits to Justice for Child Sex Abuse Victims Act of 2022") made it clear thatit eliminated the statute of limitations for "any claim or action that, as of the date [of enactment of this Act], would not have been barred under section 2255(b) of title 18, United States Code, as it read on the day before the date of enactment of this Act[.]" 117 P.L. 176; 2022 Enacted S 3103; 117 Enacted S 3103; 136

Stat. 2108. In other words, if a claim for relief was "alive" under the previous 10-year-statute on September 15, 2022, then the statute of limitations was thenceforth eliminated.[2]

Thus, the question is whether Amanda Le *could* have brought a claim under the previous 10-year statute on September 15, 2022.[3] To analyze this question, one must look to the then-existing version of the statute and determine when her claims would have expired under it. The previous version of § 2255(b) read:

> Any action commenced under this section shall be barred unless the complaint is filed—(1) not later than 10 years after the date on which the plaintiff reasonably discovers the later of—(A) the violation that forms that basis for the claim; or (B) the injury that forms the basis for the claim; or (2) not later than 10 years after the date on which the victim reaches 18 years of age.

18 U.S.C. § 2255(b) (prior to 2022 Amendment).

Of note, this prior version of the statute provided a ten-year statute of limitations on trafficking claims which did not begin to run until victim could reasonably have discovered her abuse or discover her injury (whichever was later). As she alleged in her FAC, Ms. Le was abused and victimized beginning when she was 14 years old and until 2014, when she was 23-years-old. [Dkt. 40, ¶¶1, 59, 140] And, as a typical and foreseeable result of the very nature of the grooming and child rape she endured, she did not realize she had been abused by Bernal until 2015, when she told someone about it. FAC []. Even if she had known right away in 2015 that she was not only a victim of Bernal, but had actually been caught in a broader web of sexual abuse and trafficking which the non-Bernal defendants had allowed to happen, the statute on her claims would not have expired until 2025 at the earliest. 18 U.S.C. § 2255(b) (prior to 2022 Amendment).

---

[2] The case Defendants rely on in support of their argument (*Doe #1 v. Red Roof Inns Inc.*, 21 F.4th 714, 723 (11th Cir. 2021)) predates the amendments which did away with the 10-year statute of limitations. It is concerning that Defendants still advanced this argument when Plaintiff already clarified the changes to the statute of limitations in response to a similar argument by Defendant Sweeney. [*See* Dkt. 43, pp. 8-10]

[3] We do not discuss here the merits of Ms. Le's claim under the TVPRA. To keep this argument tidy, it is assumed they are met.

But she did not know this in 2015. In fact, it was not until 2023 that Ms. Le discovered "that there were people in leadership positions at New England Swimming . . . who knew that Bernal had raped children prior to 2008, but took no action to protect her or others." [Dkt. 40, ¶280] It was in 2023, "when she read [an October 2022] Salon Article about Bernal" that Amanda "beg[an] to become aware of the breadth of [Defendants'] knowledge and their intentional coverup [of] Bernal's raping." [Dkt. 40, ¶277] The newfound knowledge "that Bernal's proclivity to rape children was known throughout USA Swimming [and] New England Swimming . . . caused Amanda emotional and psychological damages." [Dkt. 40, ¶283] Thus, her claim is timely, since it had not even been perfected in September 2022 – a year before she reasonably discovered the violation that formed the basis of her claim.

Contrary to Defendants' argument, this is not a question of tolling and she is not asking the Court to extend the statute of limitations to accommodate her, making *Vistamar, Inc. v. Fagundo-Fagundo*, 430 F.3d 66 (1st Cir. 2005) (a 42 U.S.C. § 1983 case) entirely inapposite. As stated above, Defendants simply have the statute of limitations wrong. But even if Ms. Le was seeking to toll the statute, the question should not be decided against her on a motion to dismiss, where all inferences from the pleadings must be construed in her favor. She alleged that "Defendants individually and collectively concealed that Joe Bernal was a child sexual predator from the early 1980s until the present day, and continue to conceal the extent to which Joe Bernal sexually exploited his swimmers." [Dkt. 40, ¶275] She also alleges that "Defendants . . . concealed Bernal's conduct from Le and others in order to protect revenue streams and to protect a prestigious coach who generated 'medals and money.'" [Id., ¶276] True, "[w]illful ignorance does not toll the statute of limitations. But neither does Massachusetts law require plaintiffs to have 'the gift of prophecy' or to investigate every 'speculation' . . . ." *Genereux v. Am. Beryllia Corp.*, 577 F.3d 350, 362 n.15

(1st Cir. 2009). Even under a stricter summary judgment standard, Massachusetts courts "acknowledge that it can be difficult to separate willful from reasonable ignorance, and speculation from inevitable inference[,]" and so will send the question to a jury. *Id.*

For the foregoing reasons, Defendants' arguments miss the mark, and all of Amanda's claims are timely. Even under Defendants' misinterpretation, however, it is important to note that Amanda's sexual trafficking continued until 2015. Thus, when the statutory amendments went into effect in 2022, her live claims reached back into 2012 (ten years before), even without taking to account the tolling provision built into the statute of limitations. Even ignoring that tolling provision, there can be no argument that claims for Amanda's abuse between 2012 and 2015 were barred as of 2022.   In other words, even assuming that the previous statute had no tolling provision based on discovery of the abuse (which is wrong, because it did have such a provision), any of the instances of abuse occurring *after* September 15, 2012 would have been valid by the September 15, 2022 cut-off date for the elimination of the statute of limitations under § 2255, and are therefore still valid today.

Of course, there was a tolling provision baked into the statute as of 2015, when Amanda realized she had been sexually abused by Bernal but still eight years before she realized it was part of a broader trafficking operation.  All of her claims survive, and the motion to dismiss the TVPA claim should be denied.

### 2. Ms. Le's negligence claim is not time-barred.

Taking the well-pleaded facts as true and drawing all inferences in Ms. Le's favor, as this Court is obligated to do on this Motion, Ms. Le could not possibly have discovered her claims against USA Swimming and New England Swimming until 2022, the year the *Salon* article detailing their knowledge of Bernal's sexual proclivities and their intentional coverup of them, was

published. She did not read it until a year later, at which point she acted quickly to pursue this lawsuit.

Defendants correctly acknowledge that the statute of limitations for Ms. Le's claims against them is seven years after the date which she could reasonably have discovered "the harm and its causal connection to the Defendant's conduct." [ECF 44, pp. 6-7, *citing* M.G.L. c. 260, §4C 1/2] But Defendants err in their application of that premise by suggesting that Ms. Le was aware of *their* conduct in 2015; she was not. At that time, Plaintiff had only begun to realize that her "relationship" with Bernal was abusive and that she had been a victim. She did not believe that USA Swimming and NE Swimming were involved. Instead, all Amanda knew at that time, and all she told Mary Kay Samko about, was that she had had a "relationship with Bernal and her resulting panic attacks" [Dkt. 40, ¶141] In other words, she knew in 2015 that *Bernal*'s abuse of her had caused psychological injury. She did not know (and cannot be reasonably expected to have known) that USA Swimming and New England Swimming were aware of Bernal's abuse of athletes the entire time and had let him do as he wished because of the money and prestige he brought them.

As Defendants acknowledge, the determination of whether a plaintiff has been reasonable and diligent in discovering the basis for her claims is a factual one, and is evaluated by considering factors such as the plaintiff's age and attempts by others to obscure the connection between the abuse and their conduct. [Dkt. 44, at 7 (citing *Ross v. Garebedian*, 433 Mass. 360, 366 (2001))]. Here, the factual allegations establish that Ms. Le was a vulnerable victim of longstanding child sexual abuse when she finally recognized what had happened in 2015; moreover, she had no information available to her at that time to indicate that she was part of a broader web of misconduct as opposed to the victim of a single individual, Bernal. It would not be until she read the *Salon* article in 2023 that she learned about the conduct of Defendants USA Swimming and

NE Swimming; at that point, although she would have seven years to bring her suit, she acted promptly and filed it right away.

Even assuming that Ms. Le could possibly have discovered Defendant's conduct any sooner than 2023, the question must be how much sooner, and whether it was any time before 2017.Given that Ms. Le only realized that she had been sexually abused in 2015, and given that USA Swimming and NE Swimming kept their knowledge of Bernal's tendencies concealed, it is somewhat preposterous to argue that this Court should find as *a matter of law* at this stage that she would have reasonably discovered their conduct as early as 2017 (*i.e*, seven years before filing this lawsuit). After all, USA Swimming had made it look like it condemned Bernal's actions when it finally banned him in 2016, in response to her complaint. [Dkt. 40, ¶46]. Amanda could not have known then that this was a "too little, too late" maneuver, made only because, after her complaint, Defendants knew they could no longer get away with letting Bernal abuse children.

Indeed, Ms. Le's well-pleaded allegations sufficiently establish that her claims accrued no earlier than 2022 (when the *Salon* article was published) and would expire no sooner than 2029. But in addition to this, Ms. Le benefits from a different tolling provision because she has specifically alleged that Defendants actively concealed that Bernal was a child sexual predator from the early 1980s through the present to protect revenue streams, and as a result of that concealment, Ms. Le did not begin to become aware of the breadth of their knowledge and intentional coverup until late 2023. [Dkt. 40, ¶¶275-77] Thus, the statute was tolled under the doctrine of fraudulent concealment.  Here, Ms. Le is not required to demonstrate active fraud to prove fraudulent concealment because USA Swimming and New England Swimming owed a special duty to her, making mere failure to disclose information to her sufficient. *O'Malley v. Burr*, Nos. 139623, 1784 CV 03497-BLS2, 2018 Mass. Super LEXIS 44, at *9 (Mar. 22, 2018) (*citing*

*Salvas v. Wal-Mart Stores, Inc.*, 452 Mass. 337, 275-76, 893 N.E.2d 1187 (2008)). Massachusetts recognizes a special duty to a third party where there is a special relationship between the person posing the risk (Bernal) and the one who can prevent the harm (USA Swimming and New England Swimming). *Lev v. Beverly Enters.-Massachusetts*, 457 Mass. 234, 242, 929 N.E.2d 303, 311 (2010) (citing Restatement (Second) of Torts § 315 (a)). Considerations relevant to this analysis include whether a defendant could reasonably foresee that he would be expected to take affirmative action to protect a plaintiff from a danger.  *Id.* at 243.

Under this rubric, it is entirely reasonable to find a special relationship between youth sports organizations and their youth members, such that the organizations should be required to protect youth from sexual abuse by adult coach members. Further, other jurisdictions examining the issue have found a special relationship between NGBs and the youth they serve. *See e.g.*, *Brown v. USA Taekwondo*, 11 Cal. 5th, 204, 204, 276 Cal. Rptr. 3d 434, 437, 483 P.3d 159, 161 (2021) (upholding decision finding special relationship between USA Taekwondo and minor athletes sufficient to establish a duty to protect them from sexual abuse by coaches).

Ms. Le adequately alleges that, due to USA Swimming's and New England Swimming's decades-long concealment of their knowledge that Bernal was a sexual predator, and their complicity in allowing him to operate as such with impunity, she could not reasonably have known that they were liable to her under a theory of negligent supervision until 2022 at the earliest, when an investigative journalist published his article in Salon. Her claim against them, therefore, is timely and the Motion should be denied

### 3.  *USA Swimming and New England Swimming benefitted from their relationship with Bernal, which is all the TVPRA requires for venture liability to attach.*

To establish liability under the TVPRA for a venture defendant, "the civil provision of the

TVPRA requires only that one 'knowingly benefit[]; . . . from participation in a venture which that person *knew or should have known* has engaged in an act in violation of [the TVPRA]' to be held liable." *Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 193 (D. Mass. 2019) (quoting 18 U.S.C. § 1595) (alterations in original). Thus, the analysis does not require that the venture defendant benefits from the *trafficking* or the sex abuse, but rather that the venture defendant benefit from *participation in a venture* that engaged in trafficking.

> a. <u>USA Swimming and New England Swimming participated in a venture they knew or should have known engaged in acts in violation of the TVPRA.</u>

There is no question that both USA Swimming and New England Swimming were involved in a venture with Bernal, as that term is defined by the TVPRA ("any group of two or more individuals associated in fact, whether or not a legal entity.") 18 U.S.C. § 1591(e)(6). This is no high bar. Bernal was a certified coach member of USA Swimming from at least 1994 until 2016. [Dkt. 40, ¶¶45, 162] USA Swimming is the National Governing Body for the sport of swimming under the USOPC. [Dkt. 40, ¶¶145-48] Local Swimming Committees ("LSCs") are separate and independent corporations to whom USA Swimming has delegated certain governing and supervisory responsibilities with certain geographic areas. [Id., ¶149] New England Swimming is the LSC for USA Swimming in Massachusetts. [Id., ¶¶3, 154]

The venture being established, the requisite scienter is also met. First, knowledge (here "knew or should have known") need only be generally alleged. Fed. R. Civ. P 9(b). "The allegations must allow nothing more than a 'reasonable inference' of scienter." *Bezdek v. Vibram USA Inc.*, No. 12-10513-DPW, 2013 U.S. Dist. LEXIS 22939, at *27 (D. Mass. Feb. 19, 2013). The well-supported allegations of the FAC amply demonstrate that USA Swimming and New

England Swimming knew that Bernal (through his Gator Swim Club) was engaged in acts in violation of the TVPRA.[4]

Since early in his career (which, for coaching, began in 1969), Bernal was known as a coach who took inappropriate liberties with his young, female athletes, including making inappropriate sexual comments, and coerced/non-consensual touching, fondling, and sex. [Dkt. 40, ¶¶17, 41] Bernal's propensity to have sexual interactions with children was known at the national governance level by at least 1976; by the time USA Swimming took over national governance from the AAU in the early 1980s, Bernal's child raping was well known within American competitive swimming circles. [Id., ¶¶42-43] The online comments to the article about Bernal being banned by USA Swimming for sexual misconduct further support the allegation that his abusive behavior was common knowledge. [See id., ¶203] Additionally, on information and belief, Bernal was included on the secret USA Swimming "flagged list" prior to his being banned in 2016, and USA Swimming was aware he had several sexual relationships with children he coached prior to 2015. [Id., ¶¶196-97] USA Swimming nevertheless named Bernal as the 1984 and 1988 Olympic Swim coach[5]. [Id., ¶¶198-199] And New England Swimming was aware of complaints about Bernal's inappropriate behavior with minor female swimmers years before Amanda started swimming. [Id., ¶202]

Finally, other individuals named as defendants in this lawsuit who were also board members for New England Swimming and active members of USA Swimming (Defendant Sweeney was on at least one USA Swimming committee in addition to being a New England

---

[4] The "participation in a venture" definition from the criminal liability section of the TVPRA does not apply to the civil liability section. *K.B. v. Inter-Continental Hotels Corp.*, No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, at *8 (D.N.H. Sep. 28, 2020). "Accordingly, [Plaintiff] is not required to allege an overt act in furtherance of or actual knowledge of a sex trafficking venture in order to sufficiently plead her civil liability claim." *Id.* at *9.

Swimming Board Member) had actual knowledge that Bernal was sexually abusing, exploiting, and trafficking Amanda Le.[6] The FAC directly alleges that, "[w]hile on the board of NES, Sweeney knew that her father had sex with the children he coached." [Dkt. 40, ¶224] Defendant Joe Frazier was on the Board of New England Swimming and knew or should have known of Joe Bernal's proclivities to rape children before Amanda Le was raped by Bernal. [*Id.*, ¶¶204-07]

> b. *USA Swimming and New England knowingly benefitted from participation in the venture.*

There is also no question that USA Swimming and New England Swimming benefitted from participation in the ventures that she knew were being used by Bernal to have sex with minor girls (i.e., the certification of Bernal as a USA Swimming coach and the affiliation between his swim club and New England Swimming and USA Swimming). "The 'knowingly benefit' element of section 1595 'merely requires that Defendant knowingly receive a financial benefit" (or "anything of value") from participation in the *venture* (again, *not* participation in the trafficking). *K.B. v. Inter-Continental Hotels Corp.*, No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, at *11 (D.N.H. Sep. 28, 2020). In her FAC, Ms. Le alleged (among other things):

- As a swim coach, Bernal was known to get excellent results, including coaching multiple Olympic medalists and world record holders and being on the US coaching staff at two Olympic games [Dkt. 40, ¶40];

- USA Swimming received dues from members [Id., ¶¶161, 182];

- Bernal produced medals and money for USA Swimming and New England Swimming [id., ¶288];

- Bernal generated membership dues for USA Swimming and New England Swimming [id., ¶289]; and

- Children paid/pay money to USA Swimming and New England Swimming to train with results-producing coaches [id., ¶291].

---

[6] Plaintiff incorporates her response in opposition to Michelle Sweeney's Motion to Dismiss by reference.

First Circuit courts have already held that hotel franchisors/corporate entities that merely receive royalties from room rentals as meeting the "knowing benefit" requirement. *K.B.*, 2020 U.S. Dist. LEXIS 250721 at *11-12. And other courts have found that "[a]lleging a 'continuous business relationship' is sufficient to show a knowing benefit." *A.D. v. Best W. Int'l, Inc.*, No. 2:22-cv-652-JES-NPM, 2023 U.S. Dist. LEXIS 150377, at *9 (M.D. Fla. Aug. 25, 2023) (citing *G.G.*, 76 F.4th 544).

Ms. Le's FAC clearly satisfies this requirement.

The case upon which Defendants primarily rely, *Jane Doe #1 v. Red Roof Inns Inc.*, 21 F.4th 714, 719 (11th Cir. 2021) is easily distinguishable and does not apply. As the Seventh Circuit has explained:

> Key to the [Jane Doe #1] court's reasoning was how the plaintiffs had chosen to define the alleged venture—specifically as a "sex trafficking" venture. The court wrote that, if the plaintiffs had alleged "that the franchisors participated in *commercial ventures* to operate hotels and that those hotel ventures violated" Section 1591, the result might have been different. The court rejected this framing, however, because the plaintiffs had not alleged it in their complaint or presented it to the district court.

*G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 561-62 (7th Cir. 2023).

Here, Ms. Le has framed the venture as a commercial one between herself and all the defendants, including her commercial relationship with USA Swimming and New England Swimming and their commercial and professional relationship with Bernal.

## CONCLUSION

Amanda Le has adequately stated a claim for relief against Defendants USA Swimming and NE Swimming.  The Motion to Dismiss should be denied.

Respectfully,

s/ Jonathan Little

Jonathan Little, *pro hac vice*
Annemarie Alonso, *pro hac vice*
SAEED & LITTLE, LLP
#189 – 133 West Market Street
Indianapolis, IN 46204
(812) 320-3367
jon@sllawfirm.com
annie@sllawfirm.com


*Alexis G. Chardon*

Alexis Chardon, pro hac vice

482 Congress Street Suite 402
Portland, Maine 04101
207-899-4644
achardon@garmeylaw.com


## CERTIFICATE OF SERVICE

I, Jonathan Little, certify that a true and accurate copy of the above was served on all counsel of record via the Courts ECF system on December 13, 2024. Further a copy of the above was mailed via first class us mail to Michelle Sweeney on December 16, 2024. Finally, a copy of this filing was sent at the time of filing to ALVARO SANCHEZ, ANNE FRAZIER, JOSEPH FRAZIER, and ALEX CRONIN, via email only in accordance with their respective requests to be served by email only:

Michelle Sweeney
470 NW 20th Street - Apt 214
Boca Raton, FL 33431
michsweeney1@gmail.com

Anne Frazier
67 Hawthorne Village Rd Apt 67
Nashua, NH 03062-2272
anne.frazier49@gmail.com

Josepth Frazier
24 Chatham Drive
Bedford, NH 03110
ajfrazier4@gmail.com

Alex Cronin
57 Savin Hill Ave Apt 1
Dorchester, MA 02125-1422
alexcoaches@gmail.com

Alvaro Sanchez
1714 Cape Coral Parkway East
Cape Coral, FL 33904
alvaro@capecoralattorney.com

/s/ Jonathan Little